IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | ) | 1:10-cv-01694-AWI-GSA |
| Plaintiff, | ) ) | |
| v. | ) ) | ORDER DIRECTING PLAINTIFF TO PROVIDE SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT |
| SANTIAGO MORALES, individually and d/b/a DOMINIC'S BAR | ) ) ) | |
| Defendant. | ) ) | (Docs. 14 and 15) |

## I. INTRODUCTION

Plaintiff J & J Sports Productions, Inc., has filed a motion for partial summary judgment against defendant Santiago Morales. Having reviewed the pleadings of record and all competent and admissible evidence submitted, the Court directs the movant to provide supplemental briefing.

## II. FACTS AND PROCEDURAL BACKGROUND

On September 16, 2010, plaintiff J & J Sports Productions, Inc. (hereinafter referred to as "Plaintiff") filed its complaint against defendant Santiago Morales, individually and d/b/a Dominic's Bar (hereinafter referred to as "Defendant"), asserting causes of action for (1) violation of 47 U.S.C.

§ 605, (2) violation of 47 U.S.C. § 553, (3) conversion and (4) violation of California's Unfair Competition Law (UCL), California Business and Professions Code Sections 17200 et seq. In the complaint, Plaintiff alleges as follows:

> "9. Pursuant to contract, Plaintiff J & J Sports Productions, Inc., was granted the exclusive nationwide commercial distribution (closed-circuit) rights to 'Number One': The Floyd Mayweather, Jr. v. Juan Manuel Marquez Championship Fight Program, telecast nationwide on Saturday, September 19, 2009 (this included all under-card bouts and fight commentary encompassed in the television broadcast of the event, hereinafter referred to as the 'Program'). [¶] 10. Pursuant to contract, Plaintiff J & J Sports Productions, Inc., entered into subsequent sublicensing agreements with various commercial entities throughout North America, including entities within the State of California, by which it granted these entities limited sublicensing rights, specifically the rights to publicly exhibit *the Program* within their respective commercial establishments in the hospitality industry (i.e., hotels, racetracks, casinos, bars, taverns, restaurants, social clubs, etc.). [¶] 11. As a commercial distributor and licensor of sporting events, including *the Program*, Plaintiff J & J Sports Productions, Inc., expended substantial monies marketing, advertising, promoting, administering, and transmitting *the Program* to its customers, the aforementioned commercial entities."

Plaintiff further alleges:

> "[¶] 12. With full knowledge that *the Program* was not to be intercepted, received, published, divulged, displayed, and/or exhibited by commercial entities unauthorized to do so, each and every of the above named Defendant and/or agents, servants, workmen or employees did unlawfully intercept, receive, publish, divulge, display, and/or exhibit *the Program* at the time of its transmission at commercial establishment in Madera, California . . . . [¶] 13. Said unauthorized interception, reception, publication, divulgence, display, and/or exhibition by each of the Defendant was done willfully and for purposes of direct and/or indirect commercial advantage and/or private financial gain."

On October 22, 2010, Defendant answered the complaint, asserting a denial of the allegations. On September 30, 2011, Plaintiff moved for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(a), seeking a judgment only as to Defendant's liability for the section 605, section 553 and conversion claims.[1]  Defendant did not file a written opposition.

### III. LEGAL STANDARD

---

[1] Plaintiff does not request judgment on the UCL cause of action.

2

1  "A party may move for summary judgment, identifying each claim or defense – or the part
2  of each claim or defense – on which summary judgment is sought.  The court shall grant summary
3  judgment if the movant shows that there is no genuine dispute as to any material fact and the movant
4  is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial
5  burden of "informing the district court of the basis for its motion, and identifying those portions of
6  'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the
7  affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."
8  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); see Fed. R. Civ.
9  P. 56(c)(1)(A).  "Where the non-moving party bears the burden of proof at trial, the moving party
10 need only prove that there is an absence of evidence to support the non-moving party's case." *In re*
11 *Oracle Corp. Securities Litigation,* 627 F.3d 376, 387 (2010) (citing *Celotex, supra,* at p. 325).  If
12 the moving party meets its initial burden, the burden shifts to the non-moving party to present
13 evidence establishing the existence of a genuine dispute as to any material fact.  See *Matsushita Elec.*
14 *Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538.  A
15 court ruling on a motion for summary judgment must construe all facts and inferences in the light
16 most favorable to the non-moving party.  See *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255,
17 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Where the motion is unopposed, the court may assume the
18 moving party's assertions of fact to be undisputed for the purposes of the motion and grant summary
19 judgment if the undisputed facts and other supporting materials show the moving party is entitled
20 to it.  See Fed. R. Civ. P. 56(e)(2), (3).

**IV. DISCUSSION**

24 ***A. The section 605 claim*** – Plaintiff's first cause of action asserts Defendant's unauthorized
25 interception and exhibition of *the Program* violated section 605 of the Federal Communications Act
26 of 1934, as amended.  Section 605 prohibits the unauthorized interception and exhibition of closed-

3

circuit television programming (see *Kingvision Pay-Per-View, Ltd. v. Jasper Grocery,* 152 F.Supp.2d 438 (S.D.N.Y. 2001)) and satellite-delivered programming. *DirecTV, Inc. v. Webb,* 545 F.3d 837, 843 (9th Cir. 2008). Subsection (a) of the statute provides in pertinent part: "[N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, . . . or meaning of such intercepted communication to any person." 47 U.S.C. § 605(a). "Any person aggrieved by a violation of subsection (a)" may bring a civil action for actual or statutory damages for each violation. 47 U.S.C. § 605(e)(3)(C). "Any person aggrieved" includes "any person with proprietary rights in the intercepted communication." 47 U.S.C. § 605(b)(6).

In support of the motion for partial summary judgment, Plaintiff submits the affidavit of its president, Joseph M. Gagliardi, who testifies Plaintiff purchased and retained the commercial exhibition licensing rights to *the Program* and thereafter sublicensed those rights to its commercial customers. Gagliardi further testifies that domestic commercial establishments contracting with Plaintiff were required to pay Plaintiff a commercial sublicense fee (based on the capacity of the establishment) to broadcast *the Program*, and that at no time did Defendant's establishment, Dominic's, ever lawfully license *the Program* from Plaintiff. Gagliardi further testifies that to the best of his knowledge, Plaintiff's programming could not be inadvertently intercepted. Plaintiff also submits the affidavit of private investigator Mitch Gerking, who testifies that on the evening of September 19, 2009 – the night *the Program* was telecast – he entered Dominic's and observed a fight between professional boxers Michael Katsidis and Vicente Escobedo being displayed on three televisions. According to Gagliardi, the Katsidis-Escobedo fight was *the Program*'s undercard bout.

Problematically for Plaintiff, Gagliardi's assertion that Plaintiff retained the commercial exhibition licensing rights to *the Program* appears to be directly contradicted by *the Program*'s rate

4

card, which is attached as an exhibit to Gagliardi's affidavit. The rate card states on its face: "Closed Circuit Information [¶] All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G&G Closed Circuit Events Inc. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY." The rate card establishes the distribution rights to *the Program* were owned by G&G Closed Circuit Events. While other evidence in the record establishes Plaintiff and G&G Closed Circuit Events operate out of the same address, suggesting they may be related entities, no evidence formally establishes the connection, if any, between them. Under these circumstances, Plaintiff cannot be adjudged a "person aggrieved" under section 605, and may not maintain a private right of action thereunder.

***B. The section 553 claim*** – Plaintiff's second cause of action asserts Defendant's unauthorized interception and exhibition of *the Program* violated section 553 of the Federal Cable Communications Policy Act of 1992, as amended. Section 553(a) provides in pertinent part: "(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). "Any person aggrieved by a violation of subsection (a)(1)" may bring a civil action for actual or statutory damages for each violation. 47 U.S.C. § 553(c)(3)(A). Consistent with the analysis of Plaintiff's section 605 claim above, Plaintiff has failed to show it is a person aggrieved and therefore cannot state a claim.

***C. The conversion claim*** – The third cause of action asserts Defendant's alleged misappropriation of *the Program* constituted conversion. In California, conversion is "the wrongful exercise of dominion over" property belonging to another. *Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066, 80 Cal.Rptr.2d 704 (1998). The elements of conversion are "(1) the plaintiff's ownership or right to possession of personal property, (2) the defendant's disposition of the property

5

in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." *Fremont Indemnity Co. v. Fremont General Corp.,* 148 Cal.App.4th 97, 119, 55 Cal.Rptr.3d 621 (2007). Intangible personal property such as television signals may be the subject of a conversion action. See *Don King Productions/Kingvision v. Lovato,* 911 F.Supp. 419, 423 (N.D.Cal. 1995). Consistent with the analysis of Plaintiff's section 605 claim above, Plaintiff has failed to show it owned distribution rights to *the Program* and cannot establish the threshold element of conversion.

## V. DISPOSITION

Based on the foregoing, the Court directs Plaintiff to provide supplemental briefing supported by competent and admissible evidence addressing the issues discussed above. Plaintiff shall have through December 5, 2011, to file such briefing with the Court.

IT IS SO ORDERED.

Dated:     November 15, 2011

CHIEF UNITED STATES DISTRICT JUDGE